Commonwealth ex rel. Eisen, Appellant, *v.* Eisen.

Argued October 13, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*William Brodsky,* for appellant.

*Wesley H. Caldwell,* with him *Michael Saxe,* for appellee.

OPINION BY ROSS, J., January 20, 1953:

The present appeal must be viewed against a background of prior litigation covering a period of nearly nine years. On December 23, 1943, the Municipal Court of Philadelphia entered an order directing Clement Eisen to pay the sum of $40 a week for the support of his wife, Leah Eisen, and their two minor children. On April 4, 1949, the order was reduced to $30 a week for the wife and one child, the elder child having attained majority. On January 25, 1950, the order was reduced to $20 a week for the wife alone, the second child having then attained legal age. Under each order the husband had the duty to pay an additional sum for "carrying charges" on certain real estate held by the entireties, located at 1719 68th Avenue, Philadelphia. A petition to vacate the order of

January 25 was filed by the husband and dismissed by the court on August 17, 1950. The petition now under consideration which was filed on May 23, 1952, was one to vacate or, in the alternative, to reduce the support order of $20 a week plus carrying charges on the aforementioned entireties real estate. A petition for attachment was filed by the wife. The court below reduced the order of support to $10 a week and dismissed the petition for attachment. From that order the wife has appealed to this Court.

The evidence adduced at the hearing may be summarized as follows: Eisen testified that the last work he had been physically able to do was in 1950 when he worked as a carpenter for ten weeks and earned the sum of $1,000. Prior thereto he had operated a lumber and millwork business, jointly owned by husband and wife. Eisen testified that his wife would not permit him to operate it himself nor would she permit the leasing of it to others to run, and she tacitly admitted her obstruction. He further testified that he was unable to work because of a diabetic condition and because he has "poor blood circulation". At the time of the hearing (June 23, 1952), he testified that his sole source of income was rentals arising from a rooming house which he owns and in which he lives. The gross income is "about $4,000" and his net income $1,500, as shown by his income tax return prepared by a public accountant. With respect to the cost of treating his illness, he testified that he visited a doctor twice a week, paid $5 for each visit and that insulin cost him $2.80 a week.

The appellant introduced into evidence photostatic copies of her husband's bank statements which disclose that he made deposits totalling $4,398.45 from January 3, 1952 to June 17, 1952, and it is her contention that her husband's bank deposits between Jan-

uary 3, 1952 and June 17, 1952 show that he had a source of income "in addition to the rents". It is argued that since the deposits over that period of approximately six months exceed one-half of his admitted gross income from rents, it necessarily follows that he had a second and undisclosed source of income. With this argument we cannot agree. In the first place, $1,-000 of the money deposited during the period in question was earned by the husband in 1950 when he was able to do carpentry work. Furthermore, there is no evidence with respect to Eisen's banking habits. It is entirely possible that part of the money deposited during the period under discussion represented rental income collected prior to January 3, 1952 but not banked until thereafter. In any event the matter of Eisen's bank deposits was fully considered by the learned court below.

The court below found: "His [Eisen's] sole source of revenue is a rooming house which he operates. Because of his physical condition he is able to perform only light work, such as entailed in the type of work he is doing now, that is, operating the rooming house. His total earnings are not likely to exceed the sum of $40.00 per week. When we take into consideration his diabetic condition, which will require medical treatment, plus expenses for insulin, etc., his net weekly income will be not more than $30.00." Upon these findings, the court based its decision to reduce the order of support to $10 a week.

In a case of this nature we do not interfere with the determination of the court below unless there is a clear abuse of discretion (*Commonwealth ex rel. Crandall v. Crandall*, 145 Pa. Superior Ct. 359, 21 A. 2d 236) and in the record before us we find no such abuse of discretion.

The order is affirmed.